UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID LEE SWANSON, JR.,

      Plaintiff,

v.                    Case No: 2:17-cv-67-FtM-99MRM

MICHAEL J. SCOTT, in his
official capacity as Sheriff
of Lee County, Florida,
ROBERT E. SMITH, ERIC M.
ZERCHER, and JONATHAN S.
ARMATO,

      Defendants.

---

## OPINION AND ORDER

This matter comes before the Court on defendants' Motion for Summary Judgment (Doc. #54) filed on May 8, 2018. Plaintiff filed a Response in Opposition (Doc. #59) on May 25, 2018. For the reasons set forth below, the Motion is granted.

### I.

This malicious prosecution case arises out of plaintiff David Swanson, Jr.'s arrest and prosecution for three controlled drug buys that took place in November and December of 2008. The underlying criminal prosecution resulted in a guilty verdict for which plaintiff served over three years imprisonment. Plaintiff's convictions and sentences were subsequently vacated due to ineffective assistance of counsel based on counsel's failure to present alibi evidence, and the State thereafter dismissed the

charges against Swanson. Plaintiff then filed this lawsuit. The operative pleading alleges both common law and Section 1983 claims against all defendants for malicious prosecution in violation of the Fourth, Fifth, and Fourteenth Amendments (Counts I-IV) and a claim for conspiracy (Count V). (Doc. #28.)

Defendants move for summary judgment, arguing that probable cause existed for Swanson's arrest and prosecution, or alternatively, that they are entitled to qualified immunity because the officers had at least arguable probable cause to arrest Swanson. Plaintiff responds that he was arrested and prosecuted without either probable cause or arguable probable cause.

## II.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana

v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. Am.'s Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983) (finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

### III.

The material, undisputed facts (along with some disputed facts) are as follows:

### A. November 13, 2008 – The First Controlled Buy

After receiving a tip from a confidential informant, on November 13, 2008, the Lee County Sheriff's Office Special Investigation Division Narcotics Unit conducted an undercover operation at the Oaks at Omni Apartments in Fort Myers, Florida to purchase crack cocaine from a black male known as "Ed." Defendant Jonathan S. Armato was the lead detective for the operation. (Doc. #54-5, 13:16-18.)

The confidential informant informed Detective Robert E. Smith that a drug dealer was working out of the apartments, and provided a cellular telephone number for Ed. (Doc. #54-1, Smith Civ. Depo.[1], 14:10-16.) On a recorded line, the confidential informant and Detective Smith called Ed to arrange the drug deal. (Doc. #54-2, Smith Crim. Depo. 4:1-7, 5:6-6:6.) Ed directed the pair to the Omni Apartments' parking lot. (Id.) Once there, Detective Smith saw a black male exit the apartments and approach the car. (Id., 6:9-25.) The black male identified himself as Ed and handed Detective Smith several pieces of crack cocaine in exchange for money. (Id., 5:6-6:25.) Ed then returned to the apartment building, and Detective Smith observed him go to the second or third floor. (Id., 7:4-11.) The transaction occurred in the late afternoon. (Doc. #54-1, 29:5-7.) Although several other deputies were involved in the operation, only Detective Smith personally observed Ed, and this was for less than three minutes.[2] (Doc. # 54-1, 31:17-22; Doc. #54-3, Armato Civ. Depo., 6:22-25.)

---

[1] The officer-defendants in this case were deposed in the underlying criminal case against Swanson, as well as in this case. Defendants provided both transcripts in support of summary judgment. The Court will refer to the depositions taken in this case as "Civ. Depo." and those from the criminal case as "Crim. Depo." The parties also testified at plaintiff's criminal trial. The Court will refer to the trial testimony as "Crim. Tr."

[2] The confidential informant was present for the November 13, 2008 controlled buy but has since passed away. The confidential informant was not deposed about the events.

## B.  Identification of Plaintiff's Photograph

The next day, in an effort to determine Ed's true name, Detective Armato contacted the property manager at the Omni Apartments and requested a list of residents living in the building Ed was seen exiting during the first controlled buy.  (Doc. #54-5, 15:20-16:24.)  Several names were given, including plaintiff's name.  (Id., 7:16-22.)  Plaintiff Swanson was the only black male living in the particular building where Ed was seen exiting.  (Doc. #54-4, Swanson Depo., 36:2-9.)  Following the meeting with the property manager, a photo of Swanson was located.

Detectives Armato and Smith have provided conflicting testimony as to whether Detective Armato located a single photograph and showed it to Smith, or whether an array of photographs including both plaintiff and other individuals was obtained and shown to Smith.  Their testimony also varies as to who first located Swanson's photograph.  See Doc. #54-1, 28:12-25; 36:22-37:5; 49:16-19; 59:6-20; Doc. #54-2, 7:2-8:15; Doc. #54-3, 7:9-8:4; Doc. #54-5, Armato Civ. Depo., 18:18-19:19; 61:9-23; Doc. #54-10, Crim. Tr., 102:25, 141:5-13.  In any event, on November 14, 2008, Detective Smith signed a color photograph identifying plaintiff as the drug dealer known as "Ed."  (Doc. #54-1, 34:8-11.)

## C. December 3, 2008 – Second Controlled Buy

On December 3, 2008, Detective Smith participated in a second controlled buy with Ed.  (Doc. #54-1, 33:9-11.)  By this time, Smith understood Ed to be David Swanson, Jr.  (Id., 34:5-7.) Calling the phone number provided by the confidential informant, Detective Smith arranged to meet Ed at the Omni Apartments to purchase marijuana.  (Id., 33:17-21.)  Ed came down the staircase to the car where the drugs and money were exchanged.  (Doc. #54-2, 11:8-12:17.)  Smith was face-to-face with Ed for three to four minutes.  (Doc. #54-1, 33:12-16.)  Following this second transaction, Detective Smith identified Swanson as Ed from a single photograph.  (Doc. #54-1, 48:21-49:19; 60:9-17.)

## D. December 5, 2008 – The Buy-Bust

Detective Armato wanted to conduct a third, buy-bust operation and arrest Ed during the exchange.  On the date selected, however, Detective Smith was out sick.  Nonetheless, Detective Smith called Ed on the phone number used for the previous transactions and asked if someone else could pick up Vicodin pills. Detective Smith identified the voice on the phone as the same person he had dealt with in the second transaction.  (Doc. #54-10, 108:3-5.)  Ed agreed, and Deputy Eric M. Zercher conducted the final undercover buy.  (Doc. #54-2, 13:1-14.)  Unlike the other officers, Deputy Zercher was familiar with Swanson from his time as a patrol officer.  He knew Swanson well enough to identify him

by face and name. (Doc. #54-6, Zercher Crim. Depo., 5:15-21.) Zercher was informed that the Lee County Sheriff's Office was targeting David Swanson that day, who was going by the street name Ed. (Id., 5:2-4, 7:24-8:1.)

Using the same procedure as the first two buys, Deputy Zercher drove to the Omni Apartments and called Ed to arrange a pick up. Once in the parking lot, Deputy Zercher identified Swanson standing approximately sixty feet away on a second-floor balcony using a cell phone. (Doc. #54-6, 6:4-11; Doc. #54-10, 125:19-24.) Comparing the conversation with Swanson's movements and lips, Deputy Zercher concluded that Swanson was the person on the other end of the line – that Swanson was Ed. (Id., 6:12-16.)

Zercher observed Swanson walk down the stairs with a second black male who Deputy Zercher recognized as Luis Powell.[3] (Doc. #54-5, 6:17-24.) Once descended, Swanson gestured and directed Powell towards Zercher's vehicle. Powell proceeded to Deputy Zercher's vehicle, and Swanson walked around the corner. (Id., 6:24-7:1.) Powell entered the car and showed Deputy Zercher the drugs. The take-down signal was given and several officers came to arrest Powell. Swanson was also arrested, without a warrant, at his mailbox around the corner. (Id., 7:2-20.)

---

[3] Powell is Swanson's nephew. (Doc. #54-4, 18:10-11.) Powell would visit plaintiff at his apartment during the relevant time period and Powell also had friends at or near the apartment complex. (Id., 27:25-29:15.)

The day of plaintiff's arrest, Detective Armato prepared a probable cause statement (Doc. #59-1, pp. 3-5) and Deputy Zercher prepared a sworn statement (Doc. #59-2). Deputy Zercher's sworn statement did not mention that Swanson had directed Powell towards Zercher's vehicle. (Id.)

Swanson and Powell dispute Deputy Zercher's version of events during the buy-bust. Swanson claims that as he was coming down the stairs on the way to check his mail and passed Powell and his friends standing in the stairwell. Swanson claims that he did not have his cell phone with him but had left it in his apartment while going to check his mail. (Doc. #54-1, 132:1-20, 135:17-19.) Swanson asserts that Powell did not follow Swanson down the stairs but stayed up on the stairwell landing while Swanson went to his mailbox. (Id., 132:24-133:6.) As Swanson began to unlock his mailbox, he was arrested. (Id., 136:3-139:13.)

As to Powell's version of events, Powell testified that he received a call on his cell phone from the buyer while Swanson was in the apartment, and that Swanson knew nothing about it. (Doc. #54-8, 42:18-24.) While talking on the phone, Powell walked down the stairs towards the car to conduct the drug deal. (Id., 43:3-13.) While walking down the stairs, Powell realized that Swanson was coming down the stairs behind him. (Id., 44:6-16.)

Although it is undisputed that a cell phone was recovered at the arrest scene, it is disputed whether it was recovered from

plaintiff or Luis Powell. Detective Armato testified that a cell phone was recovered from Swanson at the scene, but it was not listed in the chain of custody evidence list. (Doc. #54-5, 21:22-23:22, 28:7-9.) Detective Armato testified that after the cell phone was recovered from Swanson, Deputy Zercher called the number he had used to contact Ed and the cell phone rang. (Id., 31:4-11; 36:10-18.) Swanson, on the other hand, says that officers did not retrieve a phone from him (Doc. #54-10, 194:12-14) and Powell says that officers seized his cell phone at the scene. (Doc. #54-8, 73:22-23.) No one in the investigation determined who owned the phone associated with the number that Deputy Zercher had called. (Doc. #54-5, 31:21-24.) Swanson's mother, Barbara Smith, who went to the arrest scene, testified that Powell's phone was taken from him and that Swanson's cell phone was still in his apartment after the arrest. (Doc. #54-9, 42:21-43:2.) Swanson's sister, Javarsha, retrieved Swanson's cell phone from his apartment after the arrest. (Id., 43:3-44:5.) Although a cell phone was admitted into evidence at Swanson's criminal trial, no cell phone records were presented and the Lee County Sheriff's Office did not subpoena any cell phone records.

**E. Post-Arrest and Alibi Evidence**

After arrest, Swanson denied that he was involved in any drug transactions. During Swanson's interrogation, Swanson claimed that police had the wrong guy, and told officers: "I don't know

what you all are talking about, I work at the airport and you all got the wrong guy, and I keep telling them that and so they sent me to jail." (Doc. #54-4, 105:24-106:5.) Although the officers told plaintiff the dates of the drug buys he was being charged with, Swanson did not provide any further detail to police, such as his whereabouts during the dates and times of the previous drug buys. (Id., 105:10-106:5, 164:15-165:3.) Swanson was released from jail on bond that same day. (Id., 108:4-13.)

At his deposition in this civil case, Swanson testified that the day after his arrest Powell called him and apologized, admitting that he was responsible for the drug sales that led to their arrest. (Doc. #54-4, 102:15-103:11, 111:10-11, 125:12-19.) Swanson told his immediate family about Powell's confession; however, he did not tell anyone else. (Id., 111:12-19.) Despite the possibility of a significant prison sentence, neither Swanson nor his family alerted the Lee County Sheriff's Office about Powell's confession. (Id., 100:18-25; 112:21-24.) In Swanson's words, "I told [the Sheriff's Office] I didn't do it. I didn't tell them who did . . . that's not my business." (Id., 113:11-16.) Powell's mother, Trenice Swanson, also testified that Powell told her that Swanson didn't do any of the things he was charged with, and that it was Powell who conducted the drug deals. (Doc. #54-7, 30:3-17.) Ms. Swanson shared this information with Swanson's criminal attorney but did not tell the defendant

officers. (Id., 31:2-21.) At Powell's deposition, he testified that he did not tell police that he had done the things that Swanson was charged with because he "didn't want to get in worse trouble." (Doc. #54-8, 63:17-22; 69:25-70:6.)

Swanson also had alibi evidence that he did not mention to the police at the time of his arrest or before his prosecution. According to Swanson, he was at his mother's (Barbara Smith) house during the first drug buy and at work at the Southwest Florida International Airport for the second. (Doc. #54-4, 94:23-95:25, 98:8-101:14, 117:6-11.) He alleges that there were witnesses and documents to corroborate his alibi. (Id., 96:1-6, 118:3-14; 121:22-122:3.) Swanson states that this information was provided to his criminal trial attorney, yet it was never communicated to the defendant officers. Swanson testified that he never produced exculpatory evidence to the Lee County Sheriff's Office prior to (or during) his trial. (Id., 147:15-149:23.) Every witness deposed in this case has likewise confirmed that they did not provide any exculpatory information to the Lee County Sheriff's Office following Swanson's arrest. (Doc. #54-7, Trenice Swanson Depo., 29:1-31:16; Doc. #54-8, Powell Depo., 69:3-15; Doc. #54-9, Barbara Smith Depo., 35:6-36:13.)

**F. Swanson's Criminal Trial**

On July 14, 2009, Swanson proceeded to a one-day jury trial on five charges – sale and possession of cocaine for the November

13, 2008 transaction; sale and possession of marijuana for the December 3, 2008 transaction; and drug trafficking for the December 5, 2008 transaction. Defendants Smith, Armato, and Zercher were called as witnesses for the State. (Doc. #54-10, Crim. Tr.) In defense, Swanson offered only one witness – himself. Swanson did not testify that Powell confessed to him. Although Swanson testified that he was at his mom's during the first transaction, and at work during the second drug transaction, he offered nothing to corroborate this alibi. (Doc. #54-4, 99:3-20.) The jury found Swanson guilty on all charges, and his conviction was upheld on direct appeal.

## G. Post-Conviction Relief

Several years later, Swanson moved to vacate his sentence due, in part, to ineffective assistance of counsel; namely, his counsel's failure to present exculpatory evidence at trial. (Doc. #54-11.) Among other things, Swanson had provided his counsel with a timesheet that showed he was at work during the second drug buy, which defense counsel never introduced at trial. (Doc. #54-9, 33:7-34:10.) Defense counsel also never called any of Swanson's family members, who could have corroborated his alibi testimony. Presented with these facts, which were unknown at the time of trial, the State agreed to vacate Swanson's sentence. (Doc. #54-11.) The State subsequently dropped the charges. (Doc.

#28, ¶ 66.)  The evidence from Swanson's criminal case was purged in 2015.  (Doc. #54-1, 43:2-22.)

IV.

## A. Florida Malicious Prosecution Claims

Counts I through III of the Amended Complaint set forth claims under Florida law for malicious prosecution.  (Doc. #28, ¶¶ 70-94.)     Specifically, plaintiff alleges defendants committed the following:[4]

> **Count I v. Zercher** – Zercher made a statement on December 5, 2008 under oath which aided the institution of criminal action against plaintiff for which no arguable probable cause existed; and testified falsely against plaintiff at his criminal trial.  (Doc. #28, ¶¶ 73-74.)

> **Count II v. Smith** – Smith knew or should have known that probable cause did not exist for the warrantless arrest of plaintiff for the November 13, 2008 drug buy when he only saw Ed for seconds, had no information that plaintiff was the suspect of any crime, and identified plaintiff by examining a single photograph without taking any further investigation of numerous other young black males in the area.  Smith also took no steps to verify essential information or identify additional witnesses to confirm the identification of Swanson as Ed. (Id., ¶¶ 82-87.)

> **Count III v. Armato** – Armato submitted a false probable cause affidavit, which resulted in plaintiff being held

---

[4] Plaintiff also alleges that all defendants testified falsely at his trial.  (Id., ¶¶ 53-55.)  The Court finds that defendants are entitled to summary judgment on any such claims because Florida recognizes an absolute litigation privilege that "must be afforded to any act occurring during the course of a judicial proceeding ... so long as the act has some relation to the proceeding." Levin, Middlebrooks, et al. v. U.S. Fire Ins. Co., 639 So. 2d 606, 608 (Fla. 1994).

- 13 -

in custody prior to a hearing for bond. (<u>Id.</u>, ¶¶ 90-91.)

The elements of the Florida tort of malicious prosecution are:

> (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

<u>Fernander v. Bonis</u>, 947 So. 2d 584, 589 (Fla. 4th DCA 2007) (citation omitted). The failure of a plaintiff to establish any one of these six elements is fatal to a claim of malicious prosecution. Thus, to establish a claim for malicious prosecution under Florida law, plaintiff must establish facts that established "there was an absence of probable cause for the original criminal proceeding." <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1234 (11th Cir. 2004). The presence of probable cause defeats a malicious prosecution claim. <u>Fernander</u>, 947 So. 2d at 589.

## B. Count IV (Malicious Prosecution under the Fourth and Fifth Amendments)

Count IV sets forth a claim under 42 U.S.C. § 1983 alleging that all defendants violated plaintiff's Fourth and Fifth Amendment rights to be free of malicious prosecution by arresting

him without probable cause and detaining him. Specifically, plaintiff alleges:

> On December 5, 2008, Defendants under color of law violated Plaintiff's constitutional right to be free from unreasonable seizures by arresting him without a warrant and without probable cause or even arguable probable cause that Plaintiff had commented [sic] any criminal offense, and thereafter submitting false probable cause affidavits which resulted in Plaintiff being held in custody prior to a hearing for bond.

(Doc. #28, ¶ 120.)

The Eleventh Circuit "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003); Kjellsen v. Mills, 517 F.3d 1232, 1237 (11th Cir. 2008). "[A]lthough both state law and federal law help inform the elements of the common law tort of malicious prosecution, a Fourth Amendment malicious prosecution claim under § 1983 remains a federal constitutional claim, and its elements and whether they are met ultimately are controlled by federal law." Wood, 323 F.3d at 882. "To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures." Kingsland, 382 F.3d at 1234 (citing Wood, 323 F.3d at 881). As to the second prong, an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment. Brown

v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010);
Wood, 323 F.3d at 882.  The existence of probable cause defeats a
§ 1983 malicious prosecution claim.  Kjellsen, 517 F.3d at 1237;
Wood, 323 F.3d at 882.  Plaintiff has the burden of establishing
the absence of probable cause to succeed on a § 1983 claim.  Rankin
v. Evans, 133 F.3d 1425, 1436 (11th Cir. 1998).  To do so,
plaintiff must show that no reasonably objective police officer
would have perceived there to be probable cause for the arrest.
Phillips v. Fla. Fish & Wildlife Conservation Comm'n, 325 F. App'x
864, 865 (11th Cir. 2009).  Additionally, the "arguable probable
cause" standard is used to determine qualified immunity for
malicious prosecution § 1983 claims.  Grider v. City of Auburn,
Ala., 618 F.3d 1240, 1257 (11th Cir. 2010).

An officer must conduct a constitutionally sufficient
investigation before making an arrest.  Kingsland, 382 F.3d at
1228–30; Rankin, 133 F.3d at 1435–36.  While officers may not
ignore known exculpatory information in deciding whether to
arrest, they need not explore every proffered claim of innocence
or take every conceivable step to eliminate the possibility of
convicting an innocent person.  Kingsland, 382 F.3d at 1229;
Rankin, 133 F.3d at 1435.  In deciding whether probable cause
exists, an officer is "not required to sift through conflicting
evidence or resolve issues of credibility, so long as the totality
of the circumstances present a sufficient basis for believing that

an offense has been committed. Nor does probable cause require certainty on the part of the police." Dahl v. Holley, 312 F.3d 1228, 1234 (11th Cir. 2002) (citations omitted) (abrogated on other grounds by Lozman v. City of Rivera Beach, Fla., 138 S. Ct. 1945 (2018)). Additionally, "a police officer need not credit everything a suspect tells him", Rodriguez v. Farrell, 294 F.3d 1276, 1278 (11th Cir. 2002), and "is not required ... to resolve all inferences and all factual conflicts in favor of the suspect." Bailey v. Bd. of County Comm'rs, Alachua Cnty., Fla., 956 F.2d 1112, 1120 n.5 (11th Cir. 1992).

An officer has probable cause to arrest when the arrest is objectively reasonable based on the totality of the circumstances. Coffin v. Brandau, 642 F.3d 999, 1006 (11th Cir. 2011). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Coffin, 642 F.3d at 1006-07. Probable cause need only exist for some criminal offense; it does not matter that an officer believed he was arresting a suspect for a different offense. Knight v. Jacobson, 300 F.3d 1272, 1275 n. 2 (11th Cir. 2002); Lee v. Ferraro, 284 F.3d 1188, 1196 (11th Cir.2002) ("[W]hen an officer makes an arrest, which is properly supported by probable cause to arrest

for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." (citation omitted)).

The fact that the arrestee was never prosecuted, or the charges were dropped, or he was acquitted of any offense stemming from the arrest, does not impact the existence of probable cause. Jacobson, 300 F.3d at 1275; Ferraro, 284 F.3d at 1195–96; Marx v. Gumbinner, 905 F .32d 1503, 1507 (11th Cir.1990); Howell v. Tanner, 650 F.2d 610, 615 (5th Cir. Unit B July 1981) ("Once probable cause has been established, the legality of the arrest is not affected by ... a subsequent dismissal or acquittal of the charges.").

## V. Application of Principles to Counts I-IV

All four counts require the absence of probable cause to arrest, and the existence of probable cause precludes all four counts. Whether an officer possesses probable cause (or arguable probable cause) depends on the elements of the alleged crime and the operative fact pattern. Brown, 608 F.3d at 735; Skop, 485 F.3d at 1137–38; Crosby v. Monroe Cnty., 394 F.3d 1328, 1333 (11th Cir. 2004). Here, Swanson was charged and tried for sale and possession of cocaine on November 13, 2008 in violation of Fla. Stat. § 893.13; sale and possession of marijuana on December 3, 2008 in violation of Fla. Stat. § 893.13; and trafficking of a controlled substance on December 5, 2008 in violation of Fla. Stat.

§ 893.135(1)(c)(1).  In this case, the identity of the person selling the drugs was the crucial element in dispute.

## A. Probable Cause to Arrest/Detain - Initiation of Criminal Proceedings

Giving plaintiff the benefit of each and every factual inference and dispute, defendants knew the following at the time of plaintiff's arrest:  Detective Smith had conducted two face-to-face drug buys at the Omni Apartments with a black male named Ed and had the opportunity to see Ed for about three minutes on each occasion. Detective Smith identified Swanson as Ed by viewing a photograph after each controlled buy.  Swanson resided in the relevant apartment building and was the only black male living at the building.  Detective Smith spoke to Ed to set up the third transaction and identified the voice as the same individual who was involved in the first two transactions.  During the third buy, Deputy Zercher identified Swanson as the person he called to initiate the drug buy and testified that Swanson gestured Powell towards Zercher's vehicle.

Swanson argues that there was insufficient probable cause because Detective Smith was only shown a single photograph of Swanson by Detective Armato on the day after the first controlled buy, making the procedure unduly suggestive and not sufficiently reliable.  But showing a single photograph does not inherently taint an identification.  In United States v. Diaz, the Eleventh

Circuit noted that it had established a two-step analysis in assessing the constitutionality of a trial court's decision to admit an out-of-court identification:

> First, we must determine whether the original identification procedure was unduly suggestive. If we conclude that it was suggestive, we then must consider whether, under the totality of the circumstances, the identification was nonetheless reliable. Factors to consider in determine whether the identification was reliable include: (1) opportunity to view; (2) degree of attention; (3) accuracy of the description; (4) level of certainty; and (5) length of time between the crime and the identification.

248 F.3d 1065, 1102 (11th Cir. 2001) (citing Neil v. Biggers, 409 U.S. 188, 199 (1972)).

Here, taking the facts in the light most favorable to plaintiff and assuming that Detective Smith was shown only one photograph by defendant Armato[5], and even assuming that showing that one photograph was impermissibly suggestive, the identification was nonetheless reliable for the purposes of probable cause. Detective Smith made a hand-to-hand purchase of crack cocaine from Swanson in a vehicle on November 13, 2008, where he had the opportunity to view Swanson in close proximity in daylight for approximately three minutes. There was a short time between the first undercover drug buy and the officers'

---

[5] As set forth above, there is a dispute in the record as to whether a single photograph or an array was shown to Detective Smith. The Court will assume, as plaintiff argues, that only a single photograph was shown.

confirmation of defendant's identity when Detective Armato visited the apartment complex to speak with the manager the next day. Detective Smith then viewed Swanson for about three minutes during the second drug transaction. Detective Smith has never expressed doubt as to his identification. Based on this record, Deputy Smith's identification stands as trustworthy and would cause a prudent person to believe that Swanson committed the offenses alleged.

Swanson also argues that prior to arrest a reasonable officer would have confirmed whether Swanson was Ed through "additional witnesses and other verifiable evidence." (Doc. #28, ¶ 86.) However, an arresting officer is under no "affirmative obligation to seek out exculpatory information of which the officer is not aware" or "track down every lead" before making an arrest. Kelly v. Curtis, 21 F.3d 1544, 1551-52 (11th Cir. 1994). "Once probable cause is established, an officer is under no duty . . . to look for additional evidence which may exculpate the accused." Smith v. City of Fairburn, Georgia, 679 F. App'x 916, 924 (11th Cir. 2017).

Swanson further asserts that probable cause did not exist to arrest him because there is a dispute as to the owner of the cell phone recovered at the scene. While the Court agrees that there is a dispute, even taking the facts in the light most favorable to plaintiff and assuming that the cell phone was Powell's and not

Swanson's, probable cause would still exist for plaintiff's arrest. Detective Smith identified Swanson as Ed following two close face-to-face encounters, totaling more than seven minutes, and Deputy Zercher observed Swanson, who he was familiar with from his own personal experience, gesture Powell towards the vehicle during the buy-bust before walking off. This is sufficient for probable cause to arrest plaintiff for possession and sale even absent any evidence that it was Swanson's cell phone used for the drug transactions. Additionally, regardless of the ownership of the cell phone, there was ample probable cause to arrest Swanson for the first two drug sales. Accordingly, summary judgment is appropriate as to Swanson's malicious prosecution claims directed at the arrest and detention.[6]

## B. Probable Cause to Continue Criminal Proceedings

Florida law recognizes a cause of action for malicious prosecution where the defendant improperly "continued the prosecution or gave it momentum." Ware v. United States, 971 F. Supp. 1442, 1461 (M.D. Fla. 1997). Courts have found that to prevail on such a claim, plaintiff must show that the probable

---

[6] Plaintiff also argues that Deputy Zercher did not mention in his Sworn Statement completed on the day of the buy-bust (Doc. #59-2) that Swanson had gestured Powell towards his vehicle. Such an omission would not destroy probable cause to arrest plaintiff for possession and sale for the first two controlled buys. Probable cause may be found if there was cause to believe *any* crime was committed.

cause from his arrest was later nullified by other information. Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014).

Swanson argues that after he was arrested, officers failed to follow-up and investigate his statements upon arrest that he had been at work and that they had the wrong guy, which, if they had investigated would have revealed that he was at his mom's house and at work during the first two controlled buy. Such statements, however, are generally not enough to trigger a duty to investigate. See Smith v. City of Fairburn, Georgia, 679 F. App'x 916, 922 (11th Cir. 2017) (citing Beauchamp v. City of Noblesville, Ind., 320 F.3d 733, 734 (7th Cir. 2003) ("[C]riminal suspects frequently protest their innocence, and a suspect's denial of guilt generally is not enough to trigger a duty to investigate in the face of a reasonably believable witness and readily observable events."); Glenn v. City of Tyler, 242 F.3d 307, 313 n.3 (5th Cir. 2001) ("[P]robable cause is not destroyed by a suspect's denial."))

Swanson further testified that he came into possession of exculpatory evidence following his arrest, namely, his timesheet from work showing he was there during the December 3, 2008 buy, as well as Powell's confession. However, "a police officer need not credit everything a suspect tells him", Rodriguez v. Farrell, 294 F.3d 1276, 1278 (11th Cir. 2002), and "is not required ... to resolve all inferences and all factual conflicts in favor of the suspect." Bailey v. Bd. of County Comm'rs, Alachua Cnty., Fla.,

956 F.2d 1112, 1120 n.5 (11th Cir. 1992).  Even assuming that this alibi evidence is true, Swanson has submitted no evidence (and indeed concedes as much) that defendants were aware of the exculpatory information plaintiff had in his possession.  Indeed, Swanson's successful motion to vacate his sentence was based on his counsel's failure to disclose such evidence during the prosecution.

In sum, given that no evidence was proffered by defendant to undermine Detective Smith and Deputy Zercher's reliable identification of Swanson, probable cause remained throughout the ensuing prosecution until the State agreed to dismissal.

### C. Alternatively, Arguable Probable Cause Existed

An officer who makes an arrest or detention without actual probable cause is nonetheless entitled to qualified immunity in a § 1983 action if there was "arguable probable cause" for the arrest.  Brown, 608 F.3d at 734; Ferraro, 284 F.3d at 1195; Coffin, 642 F.3d at 1006.  "Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could — not necessarily would — have believed that probable cause was present." Crosby, 394 F.3d at 1332.  See also Fish v. Brown, 838 F.3d 1153, 1167 (11th Cir. 2016).

Here, even if there was not probable cause, defendants have established the existence of arguable probable cause.  A reasonable officer in defendants' shoes, and cognizant of the facts

known to the officers at the time of the arrest, could have reasonably believed that Swanson had committed the offense of possession and sale of narcotics, as well as trafficking.

### D. Count IV (Malicious Prosecution Claim against Sheriff Scott)

Plaintiff alleges in Count IV that the Sheriff is liable for the malicious prosecution carried out by his deputies because they acted "in furtherance of the customs and practices of the Lee County Sheriff's Office." (Doc. #28, ¶ 122.) A plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that was the "moving force" behind the constitutional deprivation. Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–94 (1978)). The government entity "must be found to have itself caused the constitutional violation at issue; it cannot be found liable on a vicarious liability theory." Skop, 485 F.3d at 1145 (citing Monell, 436 U.S. at 694–95). "A policy is a decision that is officially adopted by the municipality or created by an official of such rank that he or she could be said to be acting on behalf of the municipality.... A custom is a practice that is so settled and permanent that it takes on the force of law." Cooper v. Dillon, 403 F.3d 1208, 1221 (11th Cir. 2005) (quoting Sewell, 117 F.3d at 489). "Proof of a single incident of unconstitutional activity is not sufficient to impose

liability" against a municipality.  Oklahoma City v. Tuttle, 471 U.S. 808, 823–824 (1985); see also Craig v. Floyd Cnty., 643 F.3d 1306, 1310–11 (11th Cir. 2011).

The Court has determined that plaintiff's constitutional rights were not violated; therefore, there is no need to consider policy or custom.  Rooney v. Watson, 101 F.3d 1378, 1381–82 (11th Cir. 1996).  See also Mingo v. City of Mobile, Ala., 592 F. App'x 793, 799 (11th Cir. 2014).  Additionally, even if plaintiff's constitutional rights were violated in this case, summary judgment would still be appropriate because plaintiff has failed to establish that a custom or policy was the moving force behind the alleged constitutional violation.

Furthermore, plaintiff alleges in his Amended Complaint that Scott "failed to properly train and supervise offices [sic] in the conditions under which an arrest can be made as a result of undercover drug buys."  (Doc. #28, ¶ 106.)  "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983."  Connick v. Thompson, 563 U.S. 51, 60 (2011).  However, a local authority's "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  Id.  To satisfy § 1983, in a failure to train context, this failure "must amount to deliberate indifference to the rights

of persons with whom the [untrained employees] come into contact. Only then can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. (internal citations omitted).

The "stringent standard" of deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." Id. When policymakers have "actual or constructive notice" that an omission in a training program causes employees to violate citizens' constitutional rights, "the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Id. A "policy of inaction" can be the "functional equivalent of a decision by the city itself to violate the Constitution." Id.

Here, plaintiff has not pointed to another occasion in which an individual was arrested without probable cause. Furthermore, there is no evidence indicating that Sheriff Scott was on notice of the need to provide additional training for his deputies in these areas. The absence of such evidence is fatal to plaintiff's argument. Before municipal liability can arise based on the failure to establish a training policy or procedure, "the need for such training must be plainly obvious to Department decision makers." Wright v. Sheppard, 919 F.2d 665, 674 (11th Cir. 1990). The need for training is not plainly obvious unless there is

"evidence of a history or widespread abuse." Id.  See also Rocker v. City of Ocala, Fla., 355 F. App'x 312, 314 (11th Cir. 2009).

Plaintiff further alleges under Count IV that defendants submitted false sworn statements in support of the charging affidavit filed against plaintiff, "falsely claiming that Plaintiff was properly identified, that a cell phone had been recovered from him and that he controlled the drug buy that occurred on December 5, 2008, all of which was aimed at persuading the Court that probable cause supported Plaintiff's warrantless arrest," which resulted in plaintiff being held in custody prior to a hearing without bond.  (Id., ¶¶ 47, 120.)

In Brivik v. Law, the Eleventh Circuit stated that "[a]lthough the Fourth Amendment prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest, Brivik pleaded no facts indicating that Officer Law knew statements in the affidavit she filed to procure Brivik's arrest were false."  545 F. App'x 804, 806-07 (11th Cir. 2013) (internal citations omitted).  Likewise, in this case Swanson has presented no evidence that the officers knew the statements were false at the time they were made.  The Court has found that a reasonable officer standing in defendants' shoes could have concluded that Swanson had committed the offense of possession and sale of narcotics, as well as trafficking.  Furthermore, while the Court agrees that there is a dispute regarding who the cell

phone was recovered from, even taking the facts in the light most favorable to plaintiff and assuming that the cell phone was Powell's and not Swanson's, probable cause would still exist for plaintiff's arrest. Accordingly, defendants are entitled to summary judgment on Swanson's claim against them based on their sworn statements in support of the charging affidavit.

As such, the Court finds that Sheriff Scott is entitled to summary judgment on Count IV.

**VI. Count V (Civil Conspiracy Claim against All Defendants)**

In Count V, Swanson alleges that defendants, acting in their official capacities, conspired to "maliciously prosecute [him] for a series of drug offenses he did not commit." (Doc. #28, ¶ 135.) For such a claim, the Eleventh Circuit has stated:

> A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right. GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1370 (11th Cir. 1998). "The plaintiff attempting to prove such a conspiracy must show that the parties 'reached an understanding' to deny the plaintiff his or her rights. The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy." Bendiburg v. Dempsey, 909 F.2d 463, 468 (11th Cir. 1990) (citations omitted). A plaintiff claiming a § 1983 conspiracy must prove the defendants "reached an understanding" to violate the plaintiff's constitutional rights. Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., 956 F.2d 1112, 1122 (11th Cir. 1992) ("[T]he linchpin for conspiracy is agreement."). Factual proof of the existence of a § 1983 conspiracy may be based on circumstantial evidence. Burrell v. Bd. of Trs. of Ga. Military Coll., 970 F.2d 785, 789 (11th Cir. 1992).

<u>Grider v. City of Auburn, Ala.</u>, 618 F.3d 1240, 1260 (11th Cir. 2010).

Here, plaintiff has presented no evidence that defendants conspired with each other to maliciously prosecute him, nor that they reached an agreement or understanding to fabricate charges against Swanson and maliciously prosecute him. Furthermore, "to sustain a conspiracy action under § 1983, . . . a plaintiff must show an underlying actual denial of [his] constitutional rights." <u>GJR Invs. Inc. v. Cnty. of Escambia, Fla.</u>, 132 F.3d 1359, 1370 (11th Cir. 1998). Here, the Court has determined that plaintiff's constitutional rights were not violated.

Plaintiff also alleges under Count V that "Armato, Smith and Zercher, with the approval of defendant Scott, agreed to testify falsely against regarding [<u>sic</u>] Plaintiff's presence at the three drug buys and the recovery of a cell phone on his person." (Doc. #28, ¶ 131.) Plaintiff further states that the "filing of false sworn statements and testifying falsely at the trial of Plaintiff constitute unlawful acts under Florida and federal law, specifically 28 U.S.C. § 241. . . ." (<u>Id.</u>, ¶ 133.)

The Supreme Court has interpreted § 1983 to give absolute immunity to functions "intimately associated with the judicial phase of the criminal process." <u>Jones v. Cannon</u>, 174 F.3d 1271, 1281 (11th Cir. 1999) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 342

(1986). "Police officers enjoy the same absolute immunity as lay witnesses for their testimony at trial, or in front of a grand jury." Id. (internal citations omitted). In Jones v. Cannon, the Eleventh Circuit found that officers are "absolutely immune from a § 1983 civil damages action for their testimony as witnesses during Jones's criminal trial and during pre-trial depositions." Id. at 1286. Accordingly, defendants are entitled to summary judgment on Swanson's claim against them in Count V based on their pre-trial depositions and trial testimony. Summary judgment is appropriate as to Count V.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Defendants' Motion for Summary Judgment (Doc. #54) is **GRANTED.** Judgment is entered in favor of defendants on all claims. The Clerk is directed to enter judgment accordingly, terminate all pending motions and deadlines, and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this __10th__ day of August, 2018.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record